```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
LORILLARD TOBACCO COMPANY, a Delaware   :
Corporation,
                                        :    03 Civ. 4929 (WCC)
                   Plaintiff,
                                        :
        - against -                              OPINION
                                        :       AND ORDER
JAMELIS GROCERY, INC. and JAMELIS DIAZ,
                                        :
                   Defendants.
- - - - - - - - - - - - - - - - - - - - X
JAMELIS GROCERY, INC. and JAMELIS DIAZ, :

        Third-Party Plaintiffs,         :

        - against -                     :

S/A CIGARETTE COMPANY, INC.,            :

        Third-Party Defendant.          :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                                GREENBERG TRAURIG, LLP
                                                **Attorneys for Plaintiff**
                                                200 Park Avenue
                                                New York, New York  10166

                                                       - and -

                                                200 Campus Drive
                                                P.O. Box 677
                                                Florham Park, New Jersey 07932

ERIC S. ARONSON, ESQ.
CLARK P. RUSSELL, ESQ.

    Of Counsel

                                                WEISBERG AND WEISBERG
                                                **Attorneys for Defendants**
                                                2463 Broadway
                                                New York, New York 10025

S. MICHAEL WEISBERG, ESQ.

    Of Counsel

                                                           *Copies Mailed to Counsel of Record*

**CONNER, Senior D.J.:**

Plaintiff Lorillard Tobacco Company ("Lorillard") commenced this action against defendants Jamelis Grocery, Inc. ("Jamelis Grocery") and Jamelis Diaz, (collectively, the "defendants"), alleging: (1) trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114(1); (2) unfair competition, false designation of origin and misleading representation in violation of 15 U.S.C. § 1125(a); (3) trademark dilution in violation of 15 U.S.C. § 1125(c); (4) trademark dilution in violation of N.Y. GEN. BUS. LAW § 3609-1; (5) unfair competition in violation of New York common law; and (6) unfair competition in violation of N.J.S.A. § 56:4-1 *et seq.*[1] Plaintiff now moves for partial summary judgment pursuant to FED. R. CIV. P. 56, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and a permanent injunction against future infringement by defendants. For the reasons stated hereinafter, plaintiff's motion for partial summary judgment is granted along with the other relief requested.

## BACKGROUND[2]

Lorillard is the owner of a family of NEWPORT® and LORILLARD® trademarks and trade dress, used in association with cigarettes and related goods since 1956. (Pl. Rule 56.1 Stmt. ¶ 1.) Lorillard has expended substantial amounts of time and money in advertising and promoting its trademarks and trade dress throughout the United States and the world. (*Id.* ¶ 2.) As a result,

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

[2] As discussed in more detail *infra* in Part II., defendants have failed to submit a statement of material facts pursuant to Local Civil Rule 56.1. Consequently, the following facts are gleaned from Lorillard's Rule 56.1 Statement and other evidentiary submissions and are uncontested unless otherwise noted.

1

Lorillard's NEWPORT®-brand cigarettes have become the leading brand of menthol cigarettes sold in the United States and the second leading cigarette brand overall. (*Id*.) Lorillard has obtained federal registrations of its trademarks on the Principal Registry of the United States Patent and Trademark Office, including: (1) NEWPORT®, Reg. No. 1,108,876; (2) NEWPORT® (stylized), Reg. No. 2,600,870; (3) Spinnaker Design®, Reg. No. 1,178,413; (4) NEWPORT® and Design®, Reg. No. 1,191,816; and (5) LORILLARD®, Reg. No. 1,920,066.[3] (*Id*. ¶ 3.)

Jamelis Grocery is a grocery store located in Bronx, New York. (*Id*. ¶ 8.) Jamelis Grocery is a sole proprietorship, having dissolved its incorporation on June 27, 2001. (*Id*. ¶ 8.) Jamelis Diaz is the owner of Jamelis Grocery and the daughter of Luis and Maria Diaz, who both work in the store. (L. Diaz Dep. at 5-9, attached as Russell Decl., Ex. C.) Luis and Maria Diaz also have a son, Alex Diaz, who has been working at Jamelis Grocery for more than seven years. (Pl. Rule 56.1 Stmt. ¶ 29.)

One of the tasks of Lorillard representatives is to ensure that Lorillard cigarettes offered for sale in retail locations are fresh. (*Id*. ¶ 10.) When a Lorillard representative discovers products that are near the end of their normal shelf life, it is Lorillard's practice to provide the retailer with new, fresh cigarettes in exchange for the old, stale cigarettes. (Pl. Mem. Supp. Summ. J. at 3.) On June 23, 2003, Lorillard representative Huascar Carrion visited Jamelis Grocery and discovered ten packs of what appeared to be NEWPORT®-brand cigarettes that displayed an unusual product code. (Pl. Rule 56.1 Stmt. ¶ 9.) After concluding that it was an "old" product code and therefore that the cigarettes were "stale," Carrion exchanged the ten "stale" packs for ten "fresh" NEWPORT®-brand packs. (*Id*. ¶ 11.) Carrion then forwarded the ten "stale" packs to Edward O'Brien, Manager of

---

[3] We refer to these five marks collectively herein as the "Lorillard Marks" or the "Marks."

2

Sales Planning at Lorillard, for further inspection . (*Id.*) After inspection, O'Brien determined that each of the ten packs taken from Jamelis Grocery was counterfeit. (*Id*. ¶ 12.)

On July 1, 2003, Lorillard filed its Complaint in the present action, based on its finding that Jamelis Grocery was selling counterfeit "NEWPORT®-brand" cigarettes. (*Id*. ¶ 13.) Lorillard also filed a request for an *ex parte* seizure order and an Order to Show Cause with temporary restraints, which this Court granted in an Order dated July 1, 2003. (*Id*. ¶¶ 13, 14.)

On July 11, 2003, Lorillard, with the assistance of the U.S. Marshal's office, conducted the court-ordered *ex parte* seizure at Jamelis Grocery. (*Id*. ¶ 15.) During the seizure, Jason Lattimore, an attorney representing Lorillard who had been trained to identify counterfeit NEWPORT®-brand cigarettes, discovered forty-two additional packs of counterfeit NEWPORT®-brand cigarettes for sale at Jamelis Grocery. (*Id*. ¶ 16.) The counterfeit cigarettes were found in the cigarette display rack behind the cash register, in plain sight and mixed in with "authentic" packs of cigarettes. (*Id*. ¶ 17.) According to Lattimore, during the seizure, Alex Diaz, who was working at Jamelis Grocery that day, told him that sometimes Jamelis Grocery "would get people in off the street trying to sell them counterfeit cigarettes out of a garbage bag." (Lattimore Decl. ¶ 7.)[4]

The forty-two additional packs seized from Jamelis Grocery were sent to O'Brien for further inspection. (Pl. Rule 56.1 Stmt. ¶ 19.) O'Brien confirmed that each of the forty-two packs was counterfeit, bringing the total number of counterfeit NEWPORT®-brand cigarette packs discovered

---

[4] Alex Diaz later testified that Jamelis Grocery never had "people off the street" try to sell them counterfeit cigarettes, directly contradicting what Lattimore maintains Alex Diaz told him during the seizure on July 11, 2003. (A. Diaz Dep. at 23-24, attached as Russell Decl., Ex. D.) However, Alex Diaz also admitted that it was "possible" he told Lattimore that "people come in off the street and offer to sell counterfeit cigarettes to the store." (*Id*. at 25-26.)

3

at Jamelis Grocery to fifty-two.  (*Id*. ¶ 20.)  Each cigarette pack taken from Jamelis Grocery contains at least one counterfeit reproduction of the Lorillard Marks.  (*Id*. ¶ 21.)

Luis Diaz testified that he purchased all of the cigarettes for Jamelis Grocery from authorized distributor and third-party defendant S&A Tobacco Cigarette Company ("S&A").  (*Id*. ¶ 22 (citing L. Diaz Dep. at 17).)  Luis Diaz also testified that he had been purchasing cigarettes from S&A since 1990.  (*Id.* (citing L. Diaz Dep. at 19).)  However, in response to Lorillard's counsel's question as to why S&A stopped selling cigarettes to him around the time Lorillard discovered the counterfeit cigarettes, Luis Diaz testified that he never asked why.  (*Id*. (citing L. Diaz Dep. at 23).)  Additionally, Luis Diaz testified that he did not know the names of the individuals that defendants maintain were representatives of S&A, even though these individuals had been supplying Jamelis Grocery with cigarettes for more than ten years.  (L. Diaz Dep. at 35-37.)  According to Luis Diaz, the S&A representatives came to Jamelis Grocery everyday in regular street clothes and he never knew their names so he called them "cousin."  (*Id*.)  Diaz explained that "everybody over here, they call each other cousin."  (*Id*.)

Lorillard now moves pursuant to FED. R. CIV. P. 56 for summary judgment on Counts I, II and V of the Complaint.  Lorillard maintains that the "sale, offering for sale, distribution and/or trafficking in counterfeit goods with counterfeit reproductions of registered trademarks," in and of itself, constitutes: (1) trademark infringement under 15 U.S.C. § 1114(1)(a) (Count I); (2) false designation of origin under 15 U.S.C. § 1125(a) (Count II); and (3) unfair competition under New York common law (Count V).  (Pl. Mem. Supp. Summ. J. at 1.)  Therefore, according to Lorillard, because there are no material issues of fact, summary judgment on each of these counts is warranted.  (*Id*.)  Lorillard also asserts that because there is no material issue of fact as to defendants' trafficking

4

in counterfeit goods under 15 U.S.C. § 1114(1)(a), plaintiff is entitled to statutory damages in lieu of actual damages. (*Id.*) Lastly, plaintiff requests that this Court grant Lorillard a permanent injunction preventing defendants from trafficking in counterfeit goods bearing Lorillard's Marks, pursuant to 15 U.S.C. § 1116(a).

**DISCUSSION**

I.  **Standard of Review on Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255. However, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II. Defendants' Opposition as Procedurally Defective

Lorillard contends that defendants' submission in opposition to the present motion is "so defective that it should be struck from the record, and Lorillard's motion for summary judgment and statutory damages should be entered by default." (Pl. Reply Mem. Supp. Summ. J. at 2.) Lorillard's argument is three-fold. First, Lorillard notes that defendants failed to submit a memorandum of law as required by Local Civil Rule 7.1,[5] and argues that this alone is reason for the Court to grant Lorillard's motion by default. (*Id*.) Next, Lorillard notes that defendants also failed to submit a statement of material facts as required by Local Civil Rule 56.1,[6] therefore, Lorillard's Statement of Material Facts should be deemed admitted. (*Id*. at 3.) Finally, Lorillard maintains that the one document that defendants did provide to the Court, the Declaration of defendants' attorney Michael

---

[5] Local Civil Rule 7.1 provides that "all motions and all oppositions thereto shall be supported by a memorandum of law, . . . . Willful failure to comply with this Rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default."

[6] Local Civil Rule 56.1 provides:
(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.
(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.
(d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

S. Weisberg, does not comply with FED. R. CIV. P. 56(e)[7] because it consists of a "series of declarations outside his personal knowledge." (Pl. Reply Mem. Supp. Summ. J. at 3-5.)[8] In light of these three deficiencies, Lorillard requests that we disregard defendants' submission and enter summary judgment in Lorillard's favor, or, at a minimum, that we deem the facts contained in Lorillard's Rule 56.1 Statement as admitted, strike the Weisberg Declaration and proceed to summary judgment on that basis. (*Id*. at 5.)

While any one of the aforementioned shortcomings could, where appropriate, provide a separate ground for disregarding defendants' submission and entering summary judgment in plaintiff's favor, we note that district courts have broad discretion regarding whether and how to penalize a party's failure to comply with local court rules. *See Brainard v. Freightliner Corp.*, Civ. 02 No. 0317, 2002 U.S. Dist. LEXIS 18617, at *7-8 n.7 (W.D.N.Y. Oct. 1, 2002) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001) ("'A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.'")). Furthermore, "contrary to . . . [Lorillard's] assertion that this Court may grant its motion based solely on . . . [defendants'] noncompliance with the Local Rules, this Court must nevertheless determine if . . . [Lorillard] has met its initial burden in demonstrating the absence of any genuine issue of material fact." *Was v. M&T Bank*, Civ. 02 No. 0577E, 2004 U.S. Dist. LEXIS 5055, at *10-12 (W.D.N.Y. Feb. 6, 2004) (citing *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (holding that even where

---

[7] FED. R. CIV. P. 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

[8] Lorillard also asserts that the remaining portions of Weisberg's Declaration are either "conclusory . . ., completely irrelevant . . . or dead wrong." (*Id*.)

7

the opposing party fails to submit a response to a summary judgment motion, the district court may appropriately grant the motion only after examining the moving party's submission "to determine if it has met its burden of demonstrating that no material issue of fact remains for trial")).

This Court endeavors to avoid penalizing parties harshly for the procedural errors of their attorneys; therefore, we will overlook the deficiencies of defendants' submission in opposition to the present motion.[9] Thus, despite non-compliance with the Local Rules, we will accept and consider defendants' submission, the Weisberg Declaration, at least to the extent that it otherwise complies with FED. R. CIV. P. 56(e). *See Rus, Inc. v. Bay Indus.,* 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) ("To the extent that an affidavit or declaration contains material that does not comply with Rule 56(e), the Court may strike those portions, or may simply disregard them."). Nevertheless, because the statements contained in the Weisberg Declaration are not supported by citations to admissible evidence and are therefore of minimal helpfulness to the Court, we are left with no choice but to treat as admitted all statements of fact contained in Lorillard's Rule 56.1 Statement that are supported and verified by admissible evidence contained in the record. *See Was*, 2004 U.S. Dist. LEXIS 5055, at *10-12; *see also Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504-05 (S.D.N.Y. 2003) (Conner, J.). We will now examine the record to determine whether Lorillard has met its burden of demonstrating that no material issue of fact exists.

---

[9] However, we emphasize that "compliance with the LRCvP [Local Rules of Civil Procedure] is strongly encouraged. Indeed, noncompliance can result in sanctions." *Brainard*, 2002 U.S. Dist. LEXIS 18617, at *7-8 n.7.

## III. **Violations of the Lanham Act**

Lorillard alleges that defendants violated sections 15 U.S.C. § 1114(1)(a)[10] and 15 U.S.C. § 1125(a)[11] of the Lanham Act, through Jamelis Grocery's counterfeit cigarette activity. Lorillard will prevail on its claims for trademark infringement under § 1114(1)(a), and false designation of origin under § 1125(a), if it successfully establishes that: (1) Lorillard had a valid mark entitled to protection under the Lanham Act; and (2) defendants' used a similar mark in commerce in a way that would likely cause confusion among the relevant consuming public. *See Arrow Fastener Co., Inc. v. Stanley* Works, 59 F.3d 384, 390 (2d Cir. 1995) (noting that the standard is the same for claims under both sections 1114(1)(a) and 1125(a) of the Lanham Act); *see also Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("*Gucci America I*"); *K2 Advisors, LLC v. K2 Volatility Fund L.P.*, No. 02 Civ. 3984, 2002 U.S. Dist. LEXIS 18801, at *20 (S.D.N.Y. Oct. 4, 2002). We will address each element in turn.

---

[10] 15 U.S.C. § 1114(1)(a) provides that a person shall be civilly liable if, without the registrant's consent, such person:
> use[s] in commerce any reproduction, counterfeit, copy or colorable limitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

[11] 15 U.S.C. § 1125(a) deems liable for false designation of origin,
> any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . .

9

### A. Whether the Trademarks are Protected

Lorillard has provided documentation demonstrating that the Lorillard Marks are registered on the Principal Registry of the U.S. Patent and Trademark Office. (Russell Decl., Ex. A.) "'A certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (i.e., entitled to protection), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.'" *K2 Advisors*, 2002 U.S. Dist. LEXIS 18801, at *20 (citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 345 (2d Cir. 1999)); *see also Gruner + Jahr USA Publ'g, Div. of Gruner + Jahr Printing & Publ'g Co. v. Meredith Corp.,* 991 F.2d 1072, 1076 (2d Cir. 1993). In addition, because Lorillard has utilized the Marks continuously for the past five years, its right to use the marks is incontestable. *See* 15 U.S.C. § 1605; *see also Gruner*, 991 F.2d at 1076. Defendants have not offered any evidence to rebut this presumption; therefore we conclude that the Lorillard Marks are protected under the Lanham Act.[12] We will now consider whether the counterfeit marks created a likelihood of confusion.

### B. Whether the Counterfeit Marks Created a Likelihood of Confusion

When considering the likelihood of confusion, courts in the Second Circuit consider the eight-factor test set forth in *Polaroid Corp. v. Polaroid Elecs. Corp.,* 287 F.2d 492, 495-96 (2d Cir. 1961) (Friendly, J.). However, in cases, such as the present one, where counterfeit marks are

---

[12] Furthermore, we note that many courts have found the Lorillard Marks to be valid and entitled to protection. *See, e.g., Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 Civ. 4986, 2004 U.S. Dist. LEXIS 22563, at *4 (N.D. Ill. Nov. 8, 2004); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F. Supp. 2d 882, 884 (N.D. Ill. 2005).

involved, it is not "necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004); *see also Gucci America I*, 286 F. Supp. 2d at 287 (noting that "confusing the customer is the whole purpose of creating counterfeit goods") (citing *Topps Co., Inc. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302, 1996 U.S. Dist. LEXIS 18556, at *18 (S.D.N.Y. Dec. 13, 1996) (noting that "where the marks are identical, and the goods are also identical and directly competitive" a consideration of the *Polaroid* factors is unnecessary)). Accordingly, we need consider only whether the cigarettes at issue are, in fact, counterfeit, and whether those cigarettes were offered for sale at Jamelis Grocery. Defendants contend that genuine factual issues exist with respect to both questions. (Weisberg Decl. ¶ 15.) We disagree.

It is undisputed that the cigarettes in question were seized from Jamelis Grocery, where they were mixed in with authentic packs of NEWPORT®-brand cigarettes and on display for sale to customers. (Russell Decl. ¶ 17.) Regarding whether the cigarettes in question were counterfeit, Lorillard submitted the declaration of O'Brien wherein he explained his specialized knowledge in packaging and quality assurance standards and his experience in identifying counterfeit NEWPORT®-brand cigarettes. (O'Brien Decl. ¶¶ 1-3.) O'Brien also explained the bases for his conclusion that the packs of cigarettes taken from Jamelis Grocery are counterfeit NEWPORT®-brand cigarettes. (*Id*. ¶¶ 5-11.) For example, O'Brien identified several deviations in each of the packs taken from Jamelis Grocery which indicate that they are counterfeit products, including: (1) "genuine NEWPORT®-brand cigarette packs have a tear tape on the cellophane wrapping that is exactly 5/16ths of an inch long" as compared to the packs taken from Jamelis Grocery, which have

a tear tape tab that is only 3/16ths of an inch long; (2) the unique blurry printing which is found on the side panel of authentic NEWPORT®-brand cigarette packs was missing from all of the packs of cigarettes taken from Jamelis Grocery; (3) "Lorillard's packaging and printing techniques for its NEWPORT®-brand cigarettes precludes the possibility of producing any authentic packs with short tabs [i.e., 3/16ths of an inch or shorter] . . . or writing as clear as" that on the cigarettes taken from Jamelis Grocery; (4) the cigarettes taken from Jamelis Grocery had product code "40 3C22" listed on the bottom of the pack, which is a code that is no longer used for genuine NEWPORT®-brand cigarettes and is indicative of a counterfeit product; and (5) the cigarettes in each pack of cigarettes taken from Jamelis Grocery tasted stale, old and not at all like authentic NEWPORT®-brand cigarettes. (*Id.*) Defendants have produced no evidence to refute O'Brien's findings. Therefore, the Court concludes that, "with this evidence alone, no reasonable juror would fail to hold [d]efendants liable." *Gucci America I*, 286 F. Supp. at 288.

Based on the above, Lorillard has sufficiently established that: (1) the Lorillard Marks are valid and entitled to protection under the Lanham Act; and (2) the counterfeit products offered for sale at Jamelis Grocery created a likelihood of confusion. Accordingly, we conclude that Lorillard has made out a *prima facie* case that it is entitled to summary judgment on its claims under sections 1114(1)(a) and 1125(a) of the Lanham Act. We will now address Lorillard's claim for unfair competition under New York common law.

### IV. <u>Unfair Competition Under New York Common Law</u>

The essence of the tort of unfair competition under New York common law is the bad-faith misappropriation, for the commercial advantage of one person, "a benefit or 'property' right

belonging to another [person]." *Volmar Distribs. v. New York Post Co.*, 899 F. Supp. 1187, 1197 (S.D.N.Y. 1995) (Conner, J.) (quoting *Metro. Opera Ass'n v. Wagner-Nicholas Recorder Co.*, 199 Misc. 786, 793, 101 N.Y.S.2d 483, 489 (N.Y. Sup. Ct. 1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1st Dep't 1951) (quotations omitted); *see also Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (noting that the essence of New York's unfair competition law "is that the defendant has misappropriated the labors and expenditure of another").

It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law "mirror the Lanham Act claims." *Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 436-37 (S.D.N.Y. 2004) (citations and quotations omitted); *see also Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982) ("The heart of a successful claim based upon [both] . . . the Lanham Act . . . and [the] common law [causes of action] . . . is the showing of a likelihood of confusion as to the source or sponsorship of defendant's products."). However, unlike its federal counterpart, a viable common law claim for unfair competition requires an additional showing of bad faith. *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000) ("To determine that misappropriation has occurred, bad faith must be found . . . .") (citations omitted)); *see also Saratoga Vichy Spring*, 625 F.2d at 1037 (noting that central to the "notion" of unfair competition under New York law is "some element of bad faith").

Therefore, to prevail on its claim for unfair competition under New York common law Lorillard must combine its evidence supporting liability under the Lanham Act with additional evidence demonstrating that defendants acted in bad faith. *See Philip Morris USA*, 2004 U.S. Dist. LEXIS 11154, at *22-23. However, "[u]nder New York law, a presumption of bad faith attaches to

the use of a counterfeit mark." *Id.* (citing *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2d Cir. 1987) ("[A]wareness [that a mark is in use] can give rise to an inference of bad faith."); *Warner Bros., Inc. v. Am. Broad. Cos.,* 720 F.2d 231, 246-47 (2d Cir. 1983)).

Defendants deny that they were aware that they were selling counterfeit cigarettes. There is ample reason to be skeptical of this denial, because the counterfeit cigarettes they were selling almost surely did not come from Lorillard's authorized distributor S&A but from another source, such as a "garbage bag" vendor who came in off the street, and at a substantially reduced price. However, we need not pursue this issue further, for our determination that Lorillard is entitled to summary judgment on its federal claims provides support for all of the legal and equitable relief sought.

---

## V.     **Statutory Damages**

Section 1117(c) of the Lanham Act provides that in cases involving counterfeit marks the plaintiff may elect to recover statutory damages as an alternative to actual damages. In the case at bar, Lorillard has elected to pursue statutory damages rather than actual damages for defendants' infringement. Section 1117(c) provides:

> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of -
>
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2). While it is likely that Lorillard could establish that defendants' infringement was "willful," and thus be eligible for enhanced damages, we believe that standard statutory damages will provide sufficient redress and deterrence. Furthermore, we have doubts as to whether enhanced damages would be recoverable.[13]

"Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . ., making proving actual damages in these cases extremely difficult if not impossible.'" *Gucci America, Inc. v. Duty Free America, Ltd.*, 315 F. Supp. 2d 511, 510 (S.D.N.Y. 2004) ("*Gucci America II*")(quoting S. Rep. No. 104-177, at 10 (1995)); *see also Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain."). In addition, statutory damages under the Lanham Act are aimed at deterring future counterfeiting, both by the defendant in question as well as other potential counterfeiters. *See Philip Morris USA*, 2004 U.S. Dist. LEXIS 11154, at *7; *see also Lorillard*, 2004 U.S. Dist. LEXIS 22563, at *17 (noting that the actual damages figure is irrelevant under the statutory damages framework because "[a] counterfeiter must fear more than just having

---

[13] Knowledge need not be proved directly for a finding of "willful" infringement; rather, "[t]he standard for willfulness is whether the defendant had knowledge that his conduct represented infringement or *perhaps recklessly disregarded the possibility*." *Philip Morris USA*, 2004 U.S. Dist. LEXIS 11154, at *7 (citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (emphasis added) (internal quotations and other citations omitted)); *see also Lorillard*, 2004 U.S. Dist. LEXIS 22563, at *17-18 (quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 514 (7th Cir. 1994) (noting that "'one who undertakes a course of infringing conduct may neither sneer in the face of the [trademark] owner nor hide its head in the sand like an ostrich'")).

to turn over his ill gotten gains to the rightful owners").

Lorillard requests statutory damages in the amount of $10,000 for each of the five registered Lorillard Marks, for a total award of $50,000. (Pl. Mem. Supp. Summ. J. at 14.) According to Lorillard, a $50,000 award is appropriate here because: (1) defendants have "exhibited culpable conduct" by failing to "come clean" about Jamelis Grocery's purchase and sale of counterfeit NEWPORT®-brand cigarettes, and by failing to cooperate during discovery (i.e., not producing any documentation or accounting on Jamelis Grocery's profits from counterfeiting activities, and by giving unresponsive testimony during depositions);[14] (2) uncertain actual damages favor a high statutory damages award; (3) "Lorillard has expended considerable time and money to cultivate, maintain and strengthen its marks"; and (4) the counterfeit cigarette trade continues to be a dangerous and menacing public problem and therefore statutory damages are necessary to deter defendants as well as other potential counterfeiters from further counterfeiting activity.[15] (*Id*. at 15-19.)

Unfortunately, the statute "does not provide guidelines for courts to use in determining an appropriate award, as it is only limited by what 'the court considers just.'" *Gucci America II*, 315 F. Supp. 2d at 520 (quoting 15 U.S.C. § 1117(c)) (internal citation and quotations omitted). We have

---

[14] Lorillard maintains that "[a]t one point the deposition testimony [of Alex Diaz] became so unresponsive that Jamelis's own lawyer took over the questioning" and also that "Maria Diaz, the wife of the manager, disrupted Luis's deposition by repeatedly interjecting answers to pending questions in Spanish." (*Id*. at 15.) According to Lorillard, defendants' conduct prevented Lorillard from submitting direct evidence of its actual money damages. (*Id*.)

[15] Lorillard notes that there is an important "social need to deter the sale of any counterfeit product that is consumed internally by its user, as with cigarettes, because of the possibility that, as the counterfeit items are unregulated and not subject to quality controls, it could be more dangerous to the user's health than the authentic item." (*Id*. at 18.)

no doubt that statutory damages are appropriate in the case at bar. Additionally, we agree with Lorillard that counterfeit cigarettes have become an increasingly troublesome public problem for which there is a strong need for deterrence. However, we conclude that a statutory damages award in the amount of $12,500 ($2,500 for each of the five infringed Lorillard Marks) provides adequate relief in the case at bar. We believe that this amount is sufficient both to redress Lorillard's damages and to deter defendants and others who are similarly situated from engaging in the sale of counterfeit cigarettes, without being unnecessarily punitive in light of defendants' apparently limited financial means. We will now consider whether Lorillard is also entitled to injunctive relief.

### VI.     Permanent Injunction

Lorillard requests that the Court issue a permanent injunction against future infringement of the Lorillard Marks by defendants. (Pl. Mem. Supp. Summ. J. at 19.) "Section 34(a) of the Lanham Act provides courts with the 'power to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.'" *Philip Morris USA*, 2004 U.S. Dist. LEXIS 11154, at *28 (quoting 15 U.S.C. § 1116(a)). Accordingly, Lorillard may obtain a permanent injunction if it can demonstrate: "(1) actual success on the merits and (2) irreparable harm." *Gucci America I*, 286 F. Supp. 2d at 290. However, in the Second Circuit "a showing of a likelihood of confusion establishes irreparable harm." *Id*. (citing *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997)); *see also Philip Morris USA,* 2004 U.S. Dist. LEXIS 11154, at *28. Therefore, as Lorillard has already established that defendants have engaged in counterfeiting activities in violation of the Lanham Act, the Court concludes that a permanent

17

injunction is warranted.

## CONCLUSION

For the foregoing reasons, plaintiff Lorillard Tobacco Company's motion for partial summary judgment is granted and judgment is hereby entered in favor of plaintiff on Counts I and II of the Complaint. Additionally, defendants Jamelis Diaz and Jamelis Grocery are ordered to pay statutory damages in the amount of $12,500 and are permanently enjoined from selling, offering for sale or distributing cigarettes or other tobacco products bearing counterfeit reproductions of the Lorillard Marks.

SO ORDERED

Dated: White Plains, New York
July 25, 2005

_William C. Conner_
Sr. United States District Judge